Honorable ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| Neuro Science Technologies, LLC, an Iowa Limited Liability Company,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Lawrence A. Farwell,<br><br>　　　　Defendant | Case No.: 2:20-mc–00009 RSL<br><br>**MOTION BY PROPOSED INTERVENOR BRAINWAVE SCIENCE, INC. TO INTERVENE AND VACATE THIS COURT'S FEBRUARY 25, 2020 DECISION AND ORDER WHICH WAS PROCURED BY FRAUD UPON THIS COURT.** |

**Note on Motion Calendar: October 23, 2020**

**MOTION BY PROPOSED INTERVENOR BRAINWAVE SCIENCE, INC. TO INTERVENE AND VACATE THIS COURT'S FEBRUARY 25, 2020 DECISION AND ORDER WHICH WAS PROCURED BY FRAUD UPON THIS COURT.**

Proposed Intervenor Brainwave Science, Inc. (hereinafter "BWS") will and hereby does move this Court to permit it to intervene in this matter in order to protect and defend its interests in the intellectual property, including patents and trademarks, (hereinafter "Brainwave IP") particularly referenced within this Court's February 25, 2020 Decision and Order Confirming an Arbitration Award on Stipulation between Plaintiff Neuro Science Technologies, LLC (hereinafter "NST") and Defendant Lawrence A. Farwell (hereinafter "Farwell"). BWS, pursuant to Federal Rule of Civil Procedure 24, seeks intervention as of right, or in the alternative, permissive intervention.

BWS will and hereby does further move this Court, pursuant to Federal Rule of Civil Procedure 60, for an order vacating this Court's February 25, 2020 Decision and Order Confirming an Arbitration Award on Stipulation between Plaintiff NST and Defendant Farwell as procured by fraud, misrepresentation, misconduct and in flagrant violation of this Court's duly promulgated Local Court Rule 3(g) which requires parties to provide the Court with notice of pendency of all other actions or proceedings regarding the subject matter of the pending case.

## INTRODUCTION

BWS, successor in interest to Brainwave Science, LLC (hereinafter "BWS LLC"), has been actively engaged in litigation with Plaintiff Farwell and Non-Party Life Science and Technology, LLC (hereinafter "LST") regarding ownership of patents and other "Brain Fingerprinting" intellectual property associated with the Brainwave IP. Brain Fingerprinting is a technology which purportedly confirms, by the measurement of "brain waves", whether a test subject has previously been exposed to or "recognizes" a specified stimulus. BWS alleges that it acquired full rights to the Brainwave IP, including related patents (hereinafter "Brainwave Patents"), by intellectual property and patent transfer agreements executed by Farwell and BWS in 2013. **(See September 16, 2020 Declaration of Paul F Tomkins (hereinafter "Tomkins") ¶2 and Exhibit A)** Farwell disputes the

validity of the agreements and has taken the position that he did not have authority to bind the requisite parties at the time he executed the agreement. BWS initiated a declaratory action against Farwell in New York State Supreme Court seeking a determination regarding validity of the Brainwave IP agreement(s). That litigation has been pending since June of 2019. **(Tomkins ¶3, ¶4 and Exhibit B)** Insofar as LST was not a signatory to the subject agreements, and was also claiming an ownership interest in the subject intellectual property, BWS also initiated a declaratory action against LST in Wyoming Federal District Court regarding ownership of the Brainwave IP. **(Tomkins ¶5 and Exhibit C)** Subsequently, in September 2019, Farwell a pro se claim, including a declaratory action claim regarding the Brainwave IP Agreements, against BWS and LST, before a Washington State Court. (**Tomkins ¶6 and Exhibit D).** All Washington and Wyoming claims were subsequently dismissed on unopposed and/or joint motions by the parties with an agreement by LST, BWS and Farwell to arbitrate their respective non-New York claims before the American Arbitration Association (hereinafter "AAA"). **(Tomkins ¶7 and Exhibit E)** Arbitration proceedings between BWS, Farwell and LST were commenced before the AAA on June 1, 2020 and remain ongoing **(Tomkins ¶8 and Exhibit F).**

BWS first learned of the present action when Farwell moved before the AAA to dismiss the declaratory portion of BWS' claim against LST in as moot based upon this Court's February 25, 2020 Decision and Order. Within his email motion, which was not copied to counsel for BWS, Farwell asserts that "It has been established in US federal court that none of the purported parties to the proposed arbitration [] have any ownership interest whatsoever in the [Brainwave Patents]." **(Tomkins ¶9 and Exhibit G)** Following BWS' counsel's receipt of Dr. Farwell's "motion" and other correspondence to the AAA, BWS learned of Farwell's, LST's and NST's scheme to perpetrate a fraud upon this Court and the USPTO for the purpose of removing substantial portions of the Brainwave IP from the reach of State Court and Arbitral Tribunal. Farwell, NST and LST accomplished their scheme by orchestrating a manufactured and non-existent "dispute", regarding

the object of their ongoing litigation with BWS to procure an Order by this Court to be reported to and by the USPTO. In furtherance of their scheme, NST was formed on October 24, 2019 within the State of Iowa. **(Tomkins ¶10 and Exhibit H)** By agreement verified October 19, 2019 and filed October 30, 2019 with the USPTO, LST purported to assign its interests in four of the patents, particularly referenced within the agreements and disputes regarding the Brainwave IP, to NST. Mr. Kirkendorfer, who now also serves as President of both NST and LST, and Farwell, entered into an agreement to arbitrate their "disputes" on January 13, 2020 **[ECF #1 at 6]** and, within a written stipulation reached ten days thereafter purportedly resolved their "dispute" **[ECF #1 at 8-17]** The resulting Arbitration Award on Stipulation between Plaintiff NST and Defendant Farwell, as confirmed by this Court's February 25, 2020 Decision and Order, include findings and dicta which are demonstrably false and designed to improperly impact parties not represented within the proceeding. **[ECF #1 and #1.1]** BWS now moves this Court for intervenor status and respectfully requests that the Court grant Intervenor BWS relief from this Court's February 25, 2020 Decision and Order Confirming an Arbitration Award on Stipulation between Plaintiff NST and Defendant Farwell.

## STATEMENT OF FACTS

In 2012, Farwell initiated a working relationship with Brainwave's principal, Krishna Ika (hereinafter "Ika"). Farwell represented that certain intellectual property, including the entirety of the afore-referenced Brainwave IP, was held entirely by non-parties American Scientific Innovations, LLC (hereinafter "ASI") and Brain Fingerprinting Laboratories, Inc. (hereinafter "BFL") which Farwell owned or controlled. Farwell and Ika agreed to work together to develop and sell products which incorporated this intellectual property, including the entirety of the afore-referenced Brainwave IP. BWS LLC was formed for the sole purpose of developing and marketing technology and products relating to the Brainwave IP. During the parties' pre-contract "due diligence", Farwell affirmatively represented that he had authority to bind the owners of the Brainwave IP, including non-party ASI. **(Tomkins ¶11 and Exhibit I)**

On or about June 27, 2012, Farwell, in his individual capacity and as agent for ASI and BFL, agreed to, and did assign to Brainwave LLC, all rights, title and interest in said intellectual property which was inclusive of the Brainwave IP. **(Tomkins ¶2 and Exhibit A)** Farwell and other non-parties received a substantial, minority membership in Brainwave LLC in consideration of this transfer. Following the transfer, Farwell also served as a Scientific Advisor to BWS LLC. BWS LLC paid Farwell $6,000 to $11,000 per month for his work in developing the Brainwave IP from 2012 to 2016. In 2014, Farwell received additional payment(s) in excess of $100,000 when he sold a portion of the membership equity he received in exchange for the Brainwave IP. **(Tomkins ¶12 and Exhibit J)**

In or about May or June of 2016, BWS LLC Members and their business associates received undated correspondence from the then purported President of LST. **(Tomkins ¶13 and Exhibit K)** Neither BWS LLC nor its management had any prior dealings with LST. Within said correspondence, LST's representative asserted that Brainwave IP intellectual property assignment by Dr. Farwell and the entities he had purported to control was invalid based upon Farwell's lack of authority to act on behalf of the signatories to that agreement. The correspondence further represented that LST had acquired the subject Brainwave IP and Brainwave Patents from an entity owned or controlled by Farwell in 2015. Farwell subsequently admitted that author of the correspondence was a "friend" of his who served as President of LST without compensation. Farwell also admitted that he himself had personally authored substantial portions of that correspondence. **(Tomkins ¶14 and Exhibit L)**

Also in or about May or June of 2016, it was discovered that, in October 2013, Farwell had, without the knowledge or consent of Brainwave management, filed a "corrected assignment" of the Brainwave Patents which purported to assign the patents which constitute the Brainwave IP from BWS LLC back to ASI. **(Tomkins ¶15 and Exhibit M)** Within these verified documents surreptitiously filed with the USPTO, Farwell alleged that his June 27, 2012 intellectual property assignment to BWS, LLC was invalid as he had not possessed authority to act on behalf of the entities he has purported to represent within that agreement. Farwell subsequently admitted that he

had not advised Brainwave LLC membership or management of this 2013 "correction", or the basis thereof, prior to collecting substantial sums in salary from Brainwave LLC for his development of the subject intellectual property from 2012 through 2016 and for his 2014 sale of the membership shares he had received in consideration for the conveyance of the intellectual property to Brainwave LLC. **(Tomkins ¶12 and Exhibit J)** On November 29, 2016, the managing members of the BWS LLC voted to remove Farwell and BFL from membership with BWS LLC. **(Tomkins ¶16 and Exhibit N)**

In April of 2019, Brainwave initiated a declaratory judgement action regarding the validity of the June 27, 2012 intellectual property assignment which encompasses the Brainwave IP. That claim, which names Farwell other signatories to the June 27, 2012 intellectual property assignment, remains pending with within the New York State Supreme Court, New York County (**Tomkins ¶3, ¶4 and Exhibit B**).

In July of 2019, Brainwave was contacted by a Mr. Ron Kirkendorfer, the current purported President of LST and NST. Mr. Kirkendorfer reasserted that LST was the lawful owner of the Brainwave IP and Brainwave Patents. Mr. Kirkendorfer threatened litigation regarding same against Brainwave and its principals. **(Tomkins ¶17 and Exhibit O)** Within subsequent deposition testimony, Farwell explained that Mr. Kirkendorfer was a friend of his, who assumed the role of "President" of Life Science without payment of compensation or any ownership interest in the company. Farwell admitted that he had himself authored substantial portion(s) of the threatening correspondence sent to Brainwave by Mr. Kirkendorfer. **(Tomkins ¶18 and Exhibit P)**

In or about June of 2019, Farwell initiated three pro se claims against Brainwave and its principal within King and Snohomish courts in Washington State. Those complaints, wherein Farwell sought relief including a declaratory judgment relating to the intellectual property subject of the present motion, were dismissed by joint motion of the parties. Said joint motion to dismiss was circulated and filed following an agreement to arbitrate those claims between Brainwave, Farwell and LST. **(Tomkins ¶7 and Exhibit E)**

In August of 2019, Brainwave initiated a declaratory action against LST in the State of Wyoming Federal District Court. **(Tomkins ¶5 and Exhibit C)** Within his October 2019 Motion to Intervene in that action, Farwell represented to the Wyoming Court that LST maintained ownership of the intellectual property, including the Brainwave IP and that Farwell was allowed to "practice his invention" by way of a licensing agreement between himself and LST. **Tomkins ¶20 and Exhibit R; Tomkins ¶21 and Exhibit S at 6)** At no time during the pendency of that motion, or during the underlying action, did proposed intervenor Farwell advise the Court of any purported transfer of the subject intellectual property from LST to any other entity. That action was subsequently dismissed on January 31, 2020 without prejudice on motion by the undersigned. **(Tomkins ¶24 and Exhibit V)** LST also agreed to arbitrate their claims with Brainwave before the AAA. **(Tomkins ¶7 and Exhibit E)**

Brainwave initiated arbitration proceedings before the American Arbitration Association on June 1, 2020. **(Tomkins ¶ and Exhibit F)** Within an email to the AAA in that action in August of 2020, Farwell alleged that the subject intellectual property, including the Brainwave IP and Brainwave Patents, had been conveyed from LST to Plaintiff NST on or about October 30, 2019 - while the afore-referenced Wyoming and Washington actions and Farwell's motion to intervene in the Wyoming action were pending. **(Tomkins ¶9 and Exhibit G)** It was subsequently learned by Brainwave that a) Plaintiff NST was formed on October 24, 2019 within the State of Iowa. The registered agent for NST, Joanne Reed, Esq., maintained a prior professional relationship with Farwell (**Tomkins ¶19 and Exhibit Q**); b) by agreement filed October 30, 2019 with the USPTO, LST purported to assign its interests in the Brainwave IP to NST **(ECF 1 at 13)** ; c) on January 13 2020, Kirkendorfer, the purported President of LST who also now serves as the President of NST, entered into an agreement with Farwell to arbitrate their "disputes" **(ECF 1 at 4-5)** d) by Award on Stipulation made ten days following the Agreement to Arbitrate, Arbitrator Randy M. Boyer made findings that 1) Farwell had no apparent or actual authority to enter into the aforementioned assignment agreements on behalf of the entities for whom he signed in July 2013; 2) the service mark "Brain Fingerprinting" was in the public domain - declaring that Farwell had the right to utilize mark

and 3) Farwell is "free to practice the invention disclosed and enabled in said patents". **(ECF 1 at 8-17)** The Award on Stipulation dated January 23, 2020, by Arbitrator Randy M. Boyer was subsequently Confirmed on Motion to this Court dated February 7. 2020. **(ECF 2)**

## ARGUMENT

### I. BWS' Motions to Intervene should be considered timely pursuant to Federal Rule of Civil Procedure 6.

Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure provides that "When an act may or must be done within a specified time, the court may, for good cause, extend the time…on motion made after the time has expired if the party failed to act because of excusable neglect.

Upon information and belief, it is undisputed that BWS had no actual or constructive notice of the February 7, 2020 Motion to Confirm an Arbitration Award on Stipulation between Plaintiff NST and Defendant Farwell. To the contrary, Farwell himself maintained pro se claims against BWS within Washington State Courts wherein he alleged that LST owned the Brainwave IP until agreeing to dismiss same in March, 2020. BWS was not made aware of the present proceeding until being so advised by Farwell within his August, 2020 motion to dismiss to the AAA. Accordingly, it is respectfully submitted that BWS' Motions to Intervene and Vacate the February 24, 2020 Order and Judgement of this Court should be considered timely pursuant to Federal Rules of Civil Procedure Rule 6(b)(1)(B) "because of excusable neglect".

### II. BWS is Entitled to Intervene as of Right.

Federal Rule of Civil Procedure 24 allows both intervention as of right and permissive intervention. The Ninth Circuit has repeatedly expressed its strong preference for liberal evaluation of the requirements in favor of granting intervention. "[T]he requirements for intervention are broadly interpreted in favor of intervention," United States v. Alisal Water Corp., 370 F.3d 915, 919 (9th Cir. 2004), precisely because a "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489, 1496 n.8 (9th Cir. 1995) (internal citation omitted) Given the Ninth Circuit's liberal policy in favor of intervention, a court must broadly construe the following four criteria when evaluating a request to intervene by right under Fed. R. Civ. P. 24(a)(2): (1) the

application must be timely; (2) the applicant must have a significant protectable interest in the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. Prete v. Bradbury, 438 F.3d 949, 954 (9th Cir. 2006); Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998). Courts "are guided primarily by practical and equitable considerations" in assessing these criteria. Donnelly, 159 F.3d at 409.

### A. BWS' Application to Intervene is Timely

To determine whether a Proposed Intervenor's Motion is timely, the Court considers: (1) the stage of the proceeding, (2) prejudice to other parties, and (3) the reason for and length of the delay. United States v. Alisal Water Corp., 370 F.3d 915, 921 (9th Cir. 2004). As set forth, *supra*, neither BWS nor the Arbitrator had notice that Farwell and NST were engaged in parallel proceedings with related parties regarding the Brainwave IP. To the contrary, at the time the Motion was decided by this Court, Farwell himself had a standing representation to the Snohomish County Courts, in a declaratory action naming BWS and LST as co-defendants, that LST owned the subject Brainwave IP. **(Tomkins ¶6 and Exhibit D at )** At the time Farwell and NST were arbitrating their "dispute" regarding the Brainwave IP, there was also a standing affirmative representation before the Wyoming Federal District Court by Farwell that LST owned the Brainwave IP **(Tomkins ¶21 and Exhibit S at 6).** At no time prior to the dismissal of that action with agreement to arbitrate between LST, Farwell and BWS on January 31, 2020 did any party advise BWS or that Court of the purported change in ownership of the Brainwave IP or the very existence of NST. Furthermore, as outlined *supra*, neither party alerted this Court of the existence of their ongoing disputes regarding the very object of their "dispute" with identical or related parties in multiple jurisdictions as required by Local Court Rule 3(g) and 3(h).

Given the complete lack of any notice regarding these proceedings, resulting solely from omissions and affirmative misrepresentations by Farwell and NST, the third factor weighs heavily in favor of a timely motion to intervene. It is respectfully submitted that it would be improper to consider factors involving the "stage of the proceeding" as a basis for denying intervention where

any delay is solely due to the parties' omissions and affirmative misrepresentations. It would likewise be improper to deny BWS' motion to intervene on the basis of "prejudice to other parties" on the basis of any "prejudice" to Farwell's or NST's scheme to procure a Court Order by Fraud.

### B. BWS has a Significant, Protectable Interest Which May be Impaired.

A proposed intervenor will be found to have a "significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claim." Cal. ex rel. Lockyer v. United States, 450 F.3d 436, 441 (9th Cir. 2006) (quoting Donnelly, 159 F.3d at 409). A significantly protectable interest is very closely linked with the third requirement for intervention of right—that the outcome of the challenge may impair the proposed intervenor's interest. Indeed, once such an interest obtains, a court should have "little difficulty concluding that the disposition of th[e] case may, as a practical matter, affect" the intervenor. Citizens for Balanced Use v. Montana Wilderness Association, 647 F.3d 893, 898 (9th Cir. 2011) (citation omitted). The impairment in the present case is imminent. If this Court's February 25, 2020 Decision and Order remains intact, the USPTO will continue to report and interpret Farwell's and NST's stipulated findings of fact as being determinative of BWS' claims now pending in New York and before the arbitral authority. If BWS is not permitted to intervene here, it will have no legal means to challenge the findings embodied within this Court's February 25, 2020 Decision and Order. Under these circumstances, Brainwave satisfies the impairment factor.

### C. No Existing Parties to the Action Adequately Represented Brainwave

A proposed intervenor can establish this factor if it "shows that representation of [its] interest 'may be' inadequate," and "the burden of making that showing should be treated as minimal." Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n. 10 (1972) (emphasis added). As outlined *supra*, the interests of Brainwave were clearly not adequately represented by any party in this action. The guidance of the Supreme Court and the Ninth Circuit on this factor thus compels a conclusion that Brainwave has met its minimal burden to establish that no adequate representation exists to protect its narrow and parochial interest in seeing that its claims to the Brainwave IP are preserved for resolution within alternate forums.

### III. BWS is entitled to Permissive Intervention

In addition to satisfying the requirements for intervention as of right, Brainwave also satisfies those for permissive intervention. Federal Rule of Civil Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." It is clear that Brainwave's defenses "share with the main action a common question of law or fact." Brainwave intends to challenge the propriety of the purported ownership of the Brainwave IP by LST and Farwell and to ensure that any findings and dicta accurately reflect the intent of the arbitral authority and Court that the decision should not be interpreted by the USPTO as impacting the rights of non-parties. Accordingly, Brainwave respectfully requests that this Court grant it permissive intervention in the event it is denied intervention as of right.

### IV. Defendant-Intervenor Brainwave should be granted relief from this Court's February 25, 2020 Decision and Order as it was procured by fraud and in flagrant violation of this Court's duly promulgated Local Court Rule 3(g).

Rule 60(b)(3) of the Federal Rules of Civil Procedure provides that "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for… fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party". A motion under Rule 60(b) must be made within a reasonable time…no more than a year after the entry of the judgment or order or the date of the proceeding. Following its receipt of this Court's February 25, 2020 Decision and Order Confirming an Arbitration Award on Stipulation between Plaintiff NST and Defendant Farwell, The USPTO issued a "Report on the filing or determination of an action regarding a patent or trademark" based upon the Court's confirmation. The report finds 1) Plaintiff NST has clear & marketable title to above. Patents & "Developed Intellectual Property" as per reel/frame 050862/0702 & 050875/0934, except IP in expired patents 1-3, which Farwell may practice; 2) Assignments reel/frame 030779/0565, 030769/0044, 030779/0606, & 030779/0644 are null & void & have no legal binding authority" and 3) [w]hereas the service mark

"Brain Fingerprinting" has been cancelled by the USPTO and is now in the public domain, Farwell has the right to use the mark. **(ECF 3)** By scheme and design of Farwell and NST, these findings and dicta substantially undermine Brainwave's claims to the Brainwave IP and serve to obfuscate the jurisdiction of the New York Court and AAA arbitral authority to resolve the ongoing litigation regarding the identical object of this purported dispute.

The stipulated findings and dicta embodied in the Arbitration Award, as confirmed within the February 25, 2020 Decision and Order of this Court, are wrought with self-serving, misleading and demonstrably false statements. To wit, the parties falsely stipulate that a) "LST is entirely independent of and separate from Farwell" (ECF 1 at 16) despite Farwell's history of "ghost authoring" correspondence from LST **(Tomkins ¶14 and Exhibit L) (Tomkins ¶18 and Exhibit P)** and sworn testimony that he indirectly controlled LST **(Tomkins ¶23 and Exhibit U);** b) Farwell did not have "authority or apparent authority" to convey the Brainwave IP to BWS (ECF 1 at 12) despite Farwell's sworn testimony that he had represented himself as having such authority and had himself "erroneously" believed same at the time he conveyed the Brainwave IP to BWS LLC **(Tomkins ¶24 and Exhibit V);** c) "Neuro Science Technologies, LLC is entirely independent of Farwell **(ECF 1 at 9-10)** despite, upon information and belief, Farwell having himself participated in the formation of NST and the hiring of his colleague to serve as the registered agent of NST (**Tomkins ¶19 and Exhibit Q**);.

Rule 60(b)(3) of the Federal Rules of Civil Procedure allows this Court, on "motion and just terms", to vacate a judgment upon a showing of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party" The overwhelming evidence suggests that NST is a shill party, created for the sole purpose of perpetuating a fraud upon the Arbitral Authority, this Court and the USPTO by way of orchestrating a manufactured and non-existent dispute. In furtherance of their scheme to fraudulently obtain an Order from this Court, neither party alerted the Court of the existence of the ongoing disputes regarding the very object of their "dispute" with identical

or related parties in multiple jurisdictions as required by Local Court Rule 3(g) and 3(h).[1] Accordingly, it is respectfully submitted that the February 24, 2020 Order and Judgement of this Court should be vacated as procured by "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party"

## CONCLUSION

For the foregoing reasons, the Court should grant Brainwave's motion to intervene as of right, or in the alternative its motion for permissive intervention. Furthermore, for the forgoing reasons, Defendant-Intervenor Brainwave should be granted relief from this Court's February 25, 2020 Decision and Order Confirming an Arbitration Award on Stipulation between Plaintiff NST and Defendant Farwell as procured by fraud, misrepresentation, misconduct and in flagrant violation of this Court's duly promulgated Local Court Rule 3(g).

Respectfully submitted this 16th of September, 2020

WIEBURG LAW OFFICES, PLLC

By:_____
Brett M. Wieburg, WSBA 22353
WIEBURG LAW OFFICES, PLLC
605 E. Sunset Way
Issaquah, WA 98027
402-472-5925
Brett.Wieburg@Wieburglaw.com
Attorney for Defendant-Intervener

---

[1] Upon information and belief, Arbitrator Randy Boyer (hereinafter the "Arbitrator") was not aware of the falsity of the statements made by parties Fawell and NST within their stipulation which was converted to a arbitral award and confirmed by this Court. Upon further information and belief, neither Farwell nor NST's President, Ronald Kirkendorfer, advised the Arbitrator that the very object of the arbitral proceedings was also the subject of then-pending litigation between parties related to both litigants within the State of Washington, State of New York and Washington Federal District Courts.